# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DONNA E. BELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:14-cv-01886 |
| ) | CHIEF JUDGE CRENSHAW |
| NANCY BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Pending before the Court is Donna Bell's Motion for Judgment on the Administrative Record (Doc. No. 14). For the reasons stated herein, Bell's Motion is **DENIED**.

## I. INTRODUCTION

This is a civil action for judicial review of the Social Security Administration's ("SSA") denial of benefits to Donna Bell on April 17, 2013. Bell filed an application for supplemental security income on December 21, 2010, alleging disability beginning on January 1, 2010. The claim was denied by the SSA on May 20, 2011, and upon reconsideration on October 27, 2011. Bell filed a request for a hearing, and an Administrative Law Judge ("ALJ") heard Bell's case on March 15, 2013. The ALJ determined that Bell was not disabled under the Social Security Act. (Doc. No. 10 at 15.)[2]

---

[1] Nancy Berryhill became acting Commissioner for the Social Security Administration on January 23, 2017.

[2] Referenced hereinafter by page number(s) following the abbreviation "A.R.", the Court cites the A.R. by the page numbers which are stamped in the bottom right corner of the record.

## II. ADMINISTRATIVE HEARING

The ALJ heard testimony from Bell and from Cindy Harris, a vocational expert. Bell testified that she had a 12th grade education, was 52 years old, was about 5' 9" tall, weighed 283 pounds, did not smoke, and had no issues with abusing alcohol or drugs. (A.R. 36-37.) She stated that she had not worked since January of 2010. (A.R. 37.) She testified that she supports herself with her child's and her grandchild's disability payments plus food stamps and child support. (Id.) She also stated that the money she received in 2009 and 2010 was for "helping people get their disability." (A.R. 37, 44.)

Bell testified that she had diabetes, took medicine for that condition, and checked her blood sugar. (A.R. 46.) She stated that the symptoms from her diabetes included losing a toe, having surgery on the other foot, tingling in her foot, and not being able to sit for a long time without moving around. (Id.) She further testified that she lost her balance when walking and now uses a cane. (A.R. 51.) Bell stated that she had breathing problems and used a breathing machine when needed. (A.R. 51-52.)

Bell told the ALJ that she could stand only about 15 or 20 minutes at a time. (A.R. 53.) She needs to have help (a cane) to walk, and she can sit only about 15 to 20 minutes at a time. (Id.) She also testified that she lives with her five children and her grandson, and they help her bathe, cook, and clean. (A.R. 54.) She has tumors in her eyes, she cannot see a far distance, and bright lights and the sun hurt her eyes. (A.R. 55.) Bell takes medication for anxiety and depression. (A.R. 55-56.)

The vocational expert, Cindy Harris, testified that, although there was no exact match in the Directory of Occupational Titles ("DOT"), she believed "case aide" probably came the closest to describing Bell's prior work. (A.R. 57.) The ALJ posed a hypothetical question to Harris as follows:

> I want you to consider an individual between ages 48 and 52 years old. . . . Has got a[t] least high school education and past relevant work in the job you just described which is light, semi-skilled. For the first hypothetical, I want you to consider that the individual can perform exertional activities at a full range of light, postural activities on an occasional basis with no ladders, no duties that require balancing or crawling. So the individual can have - - should avoid concentrated exposure to extreme temperatures, fumes, dust, gas inhalants, and all hazards. Also consider that the individual should have no duties that require the individual to walk on uneven surfaces. Consider from a mental standpoint that the individual can understand, remember, and carry out a full range of detailed tasks and instructions and can have frequent interaction with the public, coworkers, and supervisors. Is that past relevant work going to be available?

(A.R. 58-59.)

Harris testified that past relevant work would be available to such an individual and there also would be other jobs in the regional or national economy that would be available as well -- e.g., cashier, information clerk, interviewer. (A.R. 59.)

When the ALJ added the limitations of standing and walking only 15 to 20 minutes at a time and less than two hours per day, with the aid of a cane, and lifting only from a seated position, Harris testified that the jobs she had identified would not be available. (A.R. 59-60.) She stated, however, that there would be a reduced number[3] of "light" positions with these limitations -- jobs classified as light, but performed from a seated position. (A.R. 60-61.)

When the ALJ added the limitation of recurring absences of at least two to three days per month, Harris testified that such an individual would not be able to sustain employment. (A.R. 62.)

---

[3] Harris reduced the number of available jobs by 75 percent. (A.R. 61.)

3

## III. THE FIVE-STEP INQUIRY

The claimant bears the ultimate burden of establishing an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

In determining disability, the SSA and the ALJ consider a five-step sequential evaluation process. The Sixth Circuit has described these five steps as:

> (1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> (2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> (3) A finding of disability will be made without consideration of vocational factors if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> (4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> (5) If a claimant cannot perform his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007).

IV. ADMINISTRATIVE DECISION

The ALJ in this case made the following findings:

1. Bell has not engaged in substantial gainful activity since December 21, 2010, the application date.

2. Bell has the following severe impairments: diabetes mellitus, morbid obesity, hypertension, asthma, and both anxiety and mood disorders.

3. Bell does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

4. Through January 2013, Bell had the residual functional capacity ("RFC") to perform "light work,"[4] except with restriction to occasional postural activities with no climbing of ladders, balancing or crawling; a need to avoid concentrated exposure to temperature extremes, pulmonary irritants like fumes, and hazards; an inability to walk on uneven surfaces; the ability to perform up to detailed tasks; and the ability to work with the public, co-workers, and supervisors frequently. Since January 2013, Bell's RFC worsened slightly such that standing or walking is now limited to 15-20 minutes at a time and no more than two hours in an eight-hour work-day, with the use of a cane.

5. Bell was capable of performing past relevant work as a case aide until January 2013. This work did not require the performance of work-related activities precluded by Bell's RFC. Additionally, both prior to January 2013 and since that time, other work has existed in the national economy that Bell could perform.

6. Bell has not been under a disability, as defined in the Social Security Act, since December 21, 2010, the date the application was filed.

(A.R.17-27.)

V. PLAINTIFF'S STATEMENT OF ERRORS

Plaintiff contends that the ALJ erred in the following ways:

(1) He failed to properly consider other severe impairments.

(2) He failed to include a function-by-function assessment in the RFC assessment.

---

[4] The regulations define "light work" as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. 416.967(b).

    (3) He relied on flawed vocational expert testimony.

    (4) He failed to properly consider obesity.

    (5) He failed to properly consider the opinion of Lillian BeAird-Gaines, M.D.

    (6) He failed to perform a proper credibility analysis.

(Doc. No. 14-1 at 1.)

## VI. STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the ALJ and whether the correct legal standards were applied. 42 U.S.C. § 405(g); Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Miller, 811 F.3d at 833. If substantial evidence supports the ALJ's decision, the Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion. Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009).

The Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012). The Court has the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g).

VII. ANALYSIS

A. Other Severe Impairments

Bell contends that the ALJ failed to find that the following conditions were severe: bilateral ptosis (drooping of the eyelid), chronic kidney disease, idiopathic skin lesion of the left foot, moderate nonproliferative diabetic retinopathy with exudative maculopathy of both eyes, and peripheral vascular disease. Bell also has undergone excision of bilateral upper eyelid tumors with reconstruction of the conjunctivae of the upper eyelids and amputation of her right fifth toe. In addition, Bell has undergone incision and drainage of her right foot. Bell argues that the ALJ's failure to find these impairments to be severe or sufficiently state why he did not find them to be severe was error.

In her Disability Report, Bell stated that her disabilities were asthma, hypertension, diabetes, anxiety, depression, bronchitis, and high blood pressure. (A.R. 141.) At the administrative hearing, the ALJ specifically asked Bell's counsel if there were any other severe or non-severe impairments besides morbid obesity, diabetes, hypertension, asthma, bronchitis, and glaucoma, and Bell's counsel stated there were not. (A.R. 43.) Counsel also represented that Bell was not alleging that she met or equaled a listing. (Id.) Bell has waived this argument concerning additional severe impairments through her Disability Report and her counsel's representations to the ALJ.

Even if she had not waived this argument, when an ALJ considers, in steps 3-5, all of an individual's impairments, even those that are not severe, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. Fisk v. Astrue, 253 F. App'x 580, 583 (6th Cir. 2007); Buchanan v. Berryhill, 2017 WL1347327 at * 4 (M.D. Tenn. Apr. 12, 2017). Here,

7

the ALJ considered Bell's other impairments in making his RFC determination, and he accounted for them by imposing significant limitations on Bell's ability to perform light work, including her ability to stand and walk.

B. Function by Function Assessment

Bell argues that the ALJ failed to conduct a function-by-function assessment in determining her RFC, as required by SSR 96-8p. Although SSR 96-8p does require a function-by-function evaluation to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged or to provide a detailed statement in writing. Smith v. Berryhill, 2017 WL 1196519 at * 9 (M.D. Tenn. Mar. 31, 2017). There is a difference between what an ALJ must consider and what an ALJ must discuss in a written opinion. (Id.) The ALJ is required only to explain how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record. (Id.)

Here, the ALJ did not simply find that Bell could perform "light work." He found that she could perform light work with additional limitations:

> except with restriction to occasional postural activities with no climbing of ladders, balancing or crawling; a need to avoid concentrated exposure to temperature extremes, pulmonary irritants like fumes, and hazards; an inability to walk on uneven surfaces; the ability to perform up to detailed tasks; and the ability to work with the public, co-workers, and supervisors frequently. Since January 2013, Bell's RFC worsened slightly such that standing or walking is now limited to 15-20 minutes at a time and no more than two hours in an eight-hour work-day, with the use of a cane.

(A.R. 19.)

All of these limitations are part of the ALJ's determination of Bell's RFC. The ALJ explained each of them and discussed the medical records and Bell's testimony. (A.R. 19-25.) The

ALJ did not err by failing to describe each step of a function-by-function analysis in his written opinion.

C. Vocational Expert Testimony

Bell contends that the vocational expert, and ultimately the ALJ, found that she could do a "full range" of light work, which requires standing or walking for a total of approximately 6 hours of an 8-hour work day. The ALJ did not find that Bell could do a "full range" of light work. The second hypothetical question posed to the expert by the ALJ added the limitations of being able to stand and walk <u>less than two hours per day</u> and that all lifting has to be done <u>from a seated position</u>.[5] Moreover, the ALJ stated that the individual would be limited to those jobs that are at a "less than full range" of light work. (A.R. 59-60.) He said that he was in between the full range of sedentary and the full range of light. (A.R. 60.)

Similarly, the ALJ opinion states, in finding that Bell's RFC had worsened since January of 2013, that Bell is limited to standing or walking no more than two hours in an eight-hour workday. Bell argues that the limitation to standing or walking no more than 2 hours per day was not included in the RFC in this decision, but it was. (<u>See</u> A.R. 19.) The ALJ did not find that Bell can do the full range of light work; he found that she can do light work with limitations, light work from a seated position.

Bell also claims that the ALJ failed to explain how she could perform pushing or pulling activities while holding a cane in her hand. Again, the ALJ specifically limited his question to jobs in which all lifting has to be done <u>from a seated position</u>. (A.R. 59.) There is no requirement to use

---

[5] "[T]he individual would be able to have a sit stand option but all the duties would have to be performed seated." (A.R. 60.)

a cane to push or pull arm-hand controls or leg-foot controls while seated. In addition, there was no evidence or argument that Bell could not push or pull from a seating position.

Finally, Bell argues that the ALJ basically testified for the vocational expert and told her what to say. The Court has read the transcript and disagrees. The vocational expert agreed with certain statements of the ALJ, but the Court finds nothing that required her to agree. The ALJ is entitled to question and determine the credibility of the witnesses, including the vocational expert. The Court finds that his questions were not improper.

D. Obesity

Bell contends that the ALJ failed to properly consider her obesity. The claimant bears the evidentiary burden of establishing that her obesity imposes functional limitations. Boles v. Colvin, 2015 WL 4506174 at * 2 (M.D. Tenn. July 23, 2015). The SSA recognizes that obesity may increase the severity of coexisting or related impairments and requires the ALJ to consider the effects of obesity at all steps of the disability evaluation process, but it does not mandate a particular mode of analysis for evaluating obesity claims. Id.; Coldiron v. Comm'r of Soc. Sec., 391 F. App'x 435, 442-43 (6th Cir. 2010).

The ALJ in this case identified morbid obesity as one of Bell's severe impairments. (A.R. 17.) In addition, the ALJ discussed Bell's obesity several times in his opinion. For example, he stated that he had considered whether the claimant's obesity independently or in concert with another impairment meets or equals any of the listed impairments and concluded that it does not. (Id.) He also noted that he had considered the possible impact of obesity on the claimant's body systems and how obesity might otherwise affect her general functioning. (A.R.19.)

The Sixth Circuit has held that an ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity. Coldiron, 391 F. App'x at 443. The ALJ here cited the medical records of Skyline Medical Center (A.R. 13F), which noted Bell's obesity. The ALJ also noted that Dr. Andrew Beckler found that Bell's obesity did not adversely limit her ability to walk, twist, turn, bend, or lift. (A.R. 22, Ex. 9F.) In summarizing Bell's medical records, the ALJ stated: "Her obesity does not appear to significantly limit her mobility, based on examination findings. She does not have significant obesity related health complications, aside from her diabetes and hypertension." (A.R. 24.)

The ALJ based his finding that Bell's obesity did not significantly limit her ability to work on medical evidence. The Court finds that the ALJ properly and adequately considered Bell's obesity in his opinion.

E. Dr. Lillian BeAird-Gaines

Bell contends that the ALJ failed to properly consider the opinion of Dr. Lillian BeAird-Gaines, who was a treating physician and wrote a letter on Bell's behalf, opining that Bell was unable to work outside her home because of her medical conditions.(See A.R. 630.) Dr. BeAird-Gaines' letter states that Bell had been seen in the Vine Hill Clinic since August of 2008. The letter notes that Bell has diabetes mellitus (under moderate control), asthma (mild intermittent), anxiety disorder with panic attacks (moderate control), depression (chronic, recurrent), and obesity. (Id.) The letter also states: "Ms. Bell experiences frequent episodes of debility due to her baseline medical conditions and would experience a high rate of job absenteeism. Further, the stress associated with full-time employment would likely exacerbate her Anxiety Disorder and result in worsening of her Depression." (Id.)

Bell argues that the ALJ erred by failing to provide the required "good reasons" for rejecting this treating source opinion. Social Security regulations require the agency to provide good reasons for the weight given to a treating physician's opinion. Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 651 (6th Cir. 2009). The ALJ's explanation must be sufficiently specific to make clear to any subsequent reviewers the weight he or she gave to the treating physician's medical opinion and the reasons for that weight. Helm v. Comm'r. of Soc. Sec., 405 F.App'x 997, 1000 (6th Cir. 2011).

Here, the ALJ did provide his reasons for rejecting this opinion. He actually listed five reasons for finding that Dr. BeAird-Gaines' opinion merited little weight. For example, the ALJ noted that Dr. BeAird-Gaines' opinion was inconsistent with Bell's treatment records (including those from Dr. BeAird-Gaines' own clinic) which suggested that Bell's impairments were "under even better control" than Dr. BeAird-Gaines suggested. (A.R. 24.) The ALJ also found that Dr. BeAird-Gaines' opinion was inconsistent with Bell's documented daily activities. (A.R. 24.)

Bell obviously disagrees with the ALJ's reasons, but the ALJ did explain those reasons and found that the opinion was not supported by the medical evidence. The Court finds that the ALJ adequately evaluated and explained his reasons for rejecting the letter from Dr. BeAird-Gaines.

F. Credibility

The Court is to accord the ALJ's determination of credibility great weight and deference particularly because the ALJ had the opportunity of observing the claimant's demeanor while testifying. Jones v. Comm'r. of Soc. Sec., 336 F.3d 468, 476 (6th Cir. 2003).[6]

Here, Bell claims that the ALJ did not adequately evaluate and assess her credibility. The ALJ specifically found that the medical records did not support Bell's allegations and that her

---

[6] The Sixth Circuit has held that an ALJ's credibility findings are virtually "unchallengeable." Ritchie v. Comm'r of Soc. Sec., 540 F. App'x 508, 511 (6th Cir. 2013).

statements about her limitations were not entirely credible. (A.R. 23.) For example, he stated that the medical records show that Bell was not compliant with her medications and treatment measures and that lack of compliance played a much larger role in her problems. (Id..) see also A.R. 203 (Bell admitted not checking her blood sugar in over a month, being non-compliant with her diabetes medicine, and non-compliant with suggested diet changes); A.R. 212 ( Bell admitted not checking blood sugar); A.R. 222 (Bell told doctor her diabetes was well controlled on medication); A.R. 567 (Bell not checking blood pressure or blood sugar at home); A.R. 573 (Bell non-compliant with blood pressure medication); A.R. 624 (primary care physician advises that Bell is on medications, but takes them as she wants, not as prescribed)).[7]

The ALJ also found that Bell's description of her symptoms was inconsistent with her daily activities, as reported by both Bell and her doctors. For example, Bell told the state psychological examiner that she managed her medications and finances with some difficulty and that she could prepare elaborate meals and wash dishes. She stated that she drives a few times a week in the daytime and plays dominoes as a hobby. (A.R. 323.) That examiner found Bell to have moderate impairment in her short-term memory and mild to moderate impairment in her ability to sustain concentration. (Id.) The examiner found that Bell showed evidence of a moderate to marked impairment in her social relating and moderate impairment in her ability to adapt to change and follow instructions. (Id.)[8]

---

[7] The ALJ stated that Bell's lack of compliance also suggested that her day-to-day symptoms were not particularly serious. (A.R. 23-24.)

[8] Dr. Beckler's records indicate that, upon physical examination, he found that Bell had no restrictions to occasionally and frequently lift and/or carry and no restrictions to stand, walk or sit with normal breaks. (A.R. 352.)

The ALJ credited Bell's complaints about her ability to walk and stand and added limitations to her RFC based upon those physical difficulties. The ALJ found that, after January of 2013, Bell could walk or stand only 15-20 minutes per day and no more than two hours in an eight-hour workday, with the use of a cane. (A.R.19.)

As indicated above, the ALJ's credibility determinations are entitled to great deference, and the Court finds that this ALJ did not err in his credibility determination regarding Bell.

## VII. CONCLUSION

For all these reasons, there is substantial evidence in the record of this case to support the decision of the ALJ and the correct legal standards were applied. Therefore, Bell's Motion for Judgment on the Administrative Record (Doc. No. 14) will be denied and the decision of the SSA will be affirmed. An appropriate Order will be entered.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE